# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTIE RUDHAM,<br><br>Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>GLOBAL CUSTOM COMMERCE, INC. and HOME DEPOT U.S.A., INC.<br><br>Defendant. | Case No. 3:23-cv-00152-DMS(BLM)<br><br>**ORDER GRANTING MOTION FOR ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION**<br><br>**[ECF NO. 20]** |

## I. PURPOSE

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure and any other applicable orders and rules.

## II. COOPERATION

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter regarding the discovery of ESI.

## III. DEFINITIONS

A. "Litigation" and "Lawsuit" mean the lawsuit filed by Plaintiff Kristie Rudham against Global Custom Commerce, Inc. and Home Depot U.S.A., Inc. in the United States District Court for the Southern District of California and assigned the Case Number 3:23-cv-00152-DMS(BLM).

B. "Custodian" means an individual or entity from whom or from which documents will be collected.

C. "Document" carries the meaning consistent with Fed. Rules 26, 34(a), and Evidence Rule 1001.

D. "Electronically Stored Information" or "ESI" carries the meaning consistent with Fed. Rules 26, 34(a), and Evidence Rule 1001.

E. "Email" means an electronic means for communicating written information through non-telephone systems that will send, store, process, and receive information.

F. "Format" means the internal structure of a file, which defines the way it is stored and its intended use.

G. "Hard Copy" documents means any Document or thing discoverable under Rules 26(b)(l) and 34 that cannot be characterized as ESI.

H. "Native Format" or "Native File" mean the underlying file(s) containing the ESI at issue in the file system in which such ESI was originally created.

I. "Party" or "Parties" means the Plaintiffs and Defendant in this Litigation.

J.   "Producing Party" means a Party that produces Documents.

K.   "Receiving Party" means a Party to whom Documents are produced.

L.   "Responsive Document" means any Document, excluding source code, that is responsive to any Document requests served on the Producing Party in the Litigation that the Producing Party has agreed to produce or that the Producing Party has been ordered to produce by the Court.

M.   "Tagged Image File Format" or "TIFF" refers to the CCITT Group IV graphic file format for storing bit-mapped images, with multiple compression formats and resolutions.

**IV.   PRESERVATION**

The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate.  To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

(a)   The parties have discussed, or will discuss, a list of the types of ESI they believe should be preserved and the custodians, or general job titles or descriptions of custodians, for whom they believe ESI should be preserved, e.g., "HR head," "scientist," and "marketing manager."  The parties shall add or remove custodians as reasonably necessary;

(b) The parties agree that the following data sources are not reasonably accessible or proportional to the needs of discovery because of undue burden or cost pursuant to 26(b)(2)(B), and therefore the parties agree not to preserve, collect, process, review and/or produce:

1.   Backup systems and/or tapes used for disaster recovery;
2.   Systems no longer in use that cannot be accessed;
3.   Deleted, slack, fragmented, or unallocated data only accessible by forensics;

4. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;
5. Server, system and network logs;
6. Data in metadata fields that are frequently updated automatically, such as last-opened dates;
7. Dynamic fields in databases or log files not stored or retained in the usual course of business; and
8. Information created or copied during the routine, good-faith performance of processes for the deployment, maintenance, retirement, and/or disposition of computer equipment that was not used by identified custodians.

**V.   SEARCH**

Prior to conducting searches for responsive ESI, the parties will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery, methods to filter out ESI that is not subject to discovery, and proposed ESI search terms. The parties will also meet and confer regarding the custodians for whom ESI will be produced.

**VI.   PRODUCTION FORMATS**

(a)   The parties agree to produce documents in TIFF and/or native file formats as set forth below. If particular documents reasonably warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such documents. The parties agree not to degrade the searchability of documents as part of the document production process.

(b)   <u>Electronic Production of Paper Documents as Static Images</u>: The parties agree that to the extent that a Producing Party elects to produce hard copy documents in electronic format, such documents will be produced in the following format:

- Single page Group 4 Tagged Image File Format (.TIF or .TIFF) files at 300 x 300 dpi resolution and 8.5 x 11 inch page size, unless a document requires a higher resolution in order to be appropriately viewed.

- A unique Bates number shall be assigned to each page, and branded in the lower right-hand corner of the page, but shall not obscure any part of the underlying image. Each image should have a unique file name, which will be the Bates number of the individual page.

- Any confidentiality or other endorsements shall be branded on the lower left-hand corner of the page or other practical area. The parties shall use reasonable measures to ensure that any such branding does not obscure any part of the underlying image.

- In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be merged into multiple records (i.e., paper documents should be logically unitized). The parties will make their best efforts to have their vendors unitize documents correctly and will commit to address situations where there are improperly unitized documents.

- The parties agree that any file folders and/or documents affixed to hard copy documents will be scanned as separate documents.

- The parties agree that the Producing Party shall also produce searchable optical character recognition ("OCR") text of scanned paper documents consistent with the specifications for Searchable Text set forth in Section 5(e), below.

(c) <u>Production of ESI in Native File Format</u>: The parties agree that certain documents will be produced in native format, including:

- Spreadsheet formatted document (e.g., Microsoft Excel Files).

- Presentation formatted documents (e.g., Microsoft PowerPoint Files). PowerPoint Documents shall be processed with hidden slides and all speaker notes unhidden and shall be processed to show both the slide and the speaker's notes on the TIFF image. PowerPoint documents that contain redactions shall be produced as static images per the specifications in Section 6(d). If the Receiving Party believes a PowerPoint document needs to be produced with color images, the parties will confer to determine the best method of production.
- Video files (*e.g.*, MPEG, AVI) and audio files (*e.g.*, MP3)

Any documents produced in native format should be produced in accordance with the following specifications:

- A unique document number shall be used as the file name, and the original file name and file extension shall be preserved in the corresponding load file. An example of this convention would be ABC-JD-00000001.
- For each produced native file, the Producing Party will provide a static image slipsheet indicating that the document was produced in native format and providing the unique Bates number for the corresponding native file.

(d)   Production of ESI as Static Images: Except for those documents produced in native format pursuant to Section 6(c) above, the parties agree that ESI will be produced in TIFF format according to the following specifications:

- The parties will produce document images as single-page, Group IV TIFF image files with an image load file in Concordance/Opticon file format. For those graphic file types that cannot reasonably be viewed in TIFF format (e.g., .jpeg, .png, .gif, etc.), those file types will be produced in color.

- A unique Bates number shall be assigned to each page and branded in the lower right-hand corner of the page, but shall not obscure any part of the underlying image. Each image should have a unique file name, which will be the Bates number of the individual page.
- Any confidentiality or other endorsements shall be branded on the lower left-hand corner of the page. The parties shall use reasonable measures to ensure that any such branding does not obscure any part of the underlying image.
- The parties agree to meet and confer regarding file types that are not amenable to conversion into TIFF images. If necessary, any such relevant and responsive, but non-convertible files, may be temporarily produced in the form of a placeholder TIFF image.

(e) <u>Production of Searchable Text</u>: Extracted text should be provided with all records, except for documents that originated as hard copy or redacted documents. Searchable/extracted text should be produced as a document-level multi-page text file with the text file named the same as the BEGBATES field and placed in a separate folder. The full path of the text file must be provided in the .DAT file in the TEXTLINK field. For files produced natively, the full path of the native file (also named the same as the BEGBATES field) must be provided in the .DAT file for the NATIVELINK field. Searchable/extracted text for redacted documents will reflect only the non-redacted portions.

(f) <u>Metadata</u>: The parties will include metadata, if available in the original file, in a .DAT file with the following fields:

- BEGBATES
- ENDBATES
- BEGATTACH
- ENDATTACH

- ALL CUSTODIANS
- TO
- FROM
- CC
- BCC
- EMAIL SUBJECT
- DATESENT (MM/DD/YYYY)
- TIMESENT
- DATERECEIVED (MM/DD/YYYY)
- TIMERECEIVED
- TIMEZONE (the time zone used for processing)
- FILENAME
- DATELASTMOD (File system date and time last modified)
- FILE_EXT (file extension)
- FILE TITLE
- FILE AUTHOR
- FILE SUBJECT
- REDACTED
- CONFIDENTIAL
- MD5 HASH
- TEXTLINK
- NATIVELINK
- PRODVOL
- ALL PATHS
- DATE CREATED
- TIME CREATED

- PAGE COUNT
- CONVERSATION INDEX

(g) A Producing Party shall not be required to search for or produce more than one identical copy of responsive documents absent a showing of good cause that the production of such additional identical copies is necessary, provided that other custodians from whom an identical copy was collected are identified in the "ALL CUSTODIANS" field.

## VII.  DEDUPLICATION

(a) Deduplication shall be performed globally (across the entire production). If a duplicate document exists that is part of a document family, the duplicate will only be removed if the entire family is removed as a duplicate.  To the extent that deduplication is used, the parties expressly agree that a document produced from one custodian's file but not produced from another custodian's file, as a result of deduplication, will nonetheless be deemed as if produced from that other custodian's file for purposes of deposition, interrogatory, request to admit and/or trial.

(b) Paper documents shall not be eliminated as duplicates or responsive ESI.

(c) In order to reduce the volume of entirely duplicative content within email threads, the Parties may utilize "email thread suppression."  As used in this agreement, email thread suppression means reducing duplicative production of email threads by producing the most recent email containing the thread of emails, as well as all attachments within the thread, and excluding emails constituting exact duplicates of emails within the produced string.  Upon a showing of good cause by the Receiving Party, the Producing Party agrees to provide metadata for specific documents and emails that are not produced, upon identification and request by the Receiving Party. Duplicative emails suppressed under this paragraph need not be reflected on the Party's privilege log.

## VIII.  PASSWORD-PROTECTED FILES.

To the extent any produced Documents are password-protected, the Producing Party shall make reasonable efforts to unlock the Document prior to production or provide passwords in order to allow access by the Receiving Party. If the Producing Party is unable to process a Document because of unknown passwords or other encryption, the Producing Party shall retain a listing of such Documents in an exception report.

## IX. TIMELY PRODUCTION

The Parties will endeavor to produce Documents in a rolling but reasonably timely manner and in accordance with the timelines set forth in the Federal Rules of Civil Procedure. If either party feels production has been unreasonably delayed, the parties agree to confer via telephone or in person in order to attempt to reach a mutually agreeable consensus prior to court involvement.

## X. DOCUMENTS PROTECTED FROM DISCOVERY

Nothing contained herein is intended to or shall serve to limit a Party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production. Further nothing contained herein is intended to reduce the time frame provided to the Producing Party to complete their review should they choose to do so.

## XI. PRIVILEGE LOG AND TREATMENT OF PRIVILEGED MATERIALS

(a)     Consistent with the Federal Rules of Civil Procedure, a Party withholding or redacting any responsive Document on the grounds of privilege, immunity, or any similar claim shall provide to the Receiving Party a privilege log within 60 days following the production of documents from which the privileged documents are withheld, except that the Parties shall have no obligation to log: (i) communications between the parties and counsel (including internal communications within a law firm or a legal department of a corporation) regarding the Litigation or Litigation strategy on and after the filing of this lawsuit and before the lawsuit in anticipation of Litigation;

1  (ii) work product material created after the start of the Litigation and before the lawsuit
2  in anticipation of Litigation; or (iii) redactions of produced documents, provided that the
3  reason for the redaction appears on the redaction label and the Producing Party logs
4  redactions of designated documents in which a log entry is necessary to enable a
5  Receiving Party to assess the claim that the information is privileged or subject to
6  protection.

7  (b)  For each Document withheld, the privilege log shall contain the following
8  information:  (i) a unique identifier, or Bates number for produced documents, (ii) the
9  date of the Document; (iii) identification of the person(s) who authored or sent the
10 Document (iv) identification of person(s) designated as addressees, copyees or blind
11 copyees; and (v) the type or nature of the privilege asserted (e.g., attorney-client
12 privilege, work-product doctrine, etc.).  For all individuals listed on a log whose role as
13 an attorney, or legal personnel acting under the direction of an attorney, is the basis for
14 a claim of privilege, the privilege log shall identify them as such (for example, by placing
15 an asterisk next to the name).

16 (c)  Any email thread that is withheld on the grounds of privilege, immunity, or
17 any similar claim shall be logged as one Document and shall be identified by the
18 top-most email in the chain, but expressly identified as an email thread.

19 **XII. REDACTIONS**

20 In addition to redactions for protecting attorney-client privilege and attorney work
21 product, the parties may use redactions to protect information prohibited from disclosure
22 by federal, state, or foreign statutes or regulations; medical information concerning any
23 individual person; and personally identifiable information or sensitive personal
24 information.  Redacted documents will be produced in TIFF format with corresponding
25 searchable OCR text and the associated metadata for the document, ensuring the
26 redacted content is fully protected from disclosure.  The Producing Party may use native
27 file redaction of spreadsheet formatted documents (i.e., Microsoft Excel) using industry
28

standard native redaction tools. Documents with native file redactions will also include searchable text and associated metadata, with protected content removed to protect disclosure.

**XIII. MODIFICATION**

This Order may be modified by an Order approved by the Court.

**IT IS SO ORDERED**.

Dated: 6/8/2023

Hon. Barbara L. Major
United States Magistrate Judge